Argued June 8, reversed and remanded July 30, 1921.

## DENNY ET AL. *v.* WOLFF.

(199 Pac. 603; 17 A. L. R. 535.)

**Factors—Ordinary Care Only Required in Shipping Fruit.**

1. Commission merchants undertaking to pack and ship fruit only owed the duty of exercising reasonable care when shipping fruit; that is, the degree of care which an ordinarily prudent man would have employed.

**Factors—Commission Merchants Held not Required to Place False Floors in Cars and Line Them With Paper to Prevent Freezing.**

2. Commission merchants undertaking to ship fruit performed their full duty when they shipped under a contract with the carrier wherein the carrier agreed to protect the fruit against loss by frost, and the commission merchants could not be *held* negligent in not placing false floors in the cars and lining them with paper; refrigerator-cars being used.

**Customs and Usages—Testimony of One Witness Insufficient to Establish Custom.**

3. Testimony of one witness is insufficient to establish a custom, under Section 801, Or. L.

From Jackson: F. M. CALKINS, Judge.

Department 1.

John Denny and H. F. Hogg are commission merchants and partners doing business under the firm

name of Denny & Company. The plaintiffs have their main office in Chicago, but they have agents at different points in the United States, including Medford, Oregon. George Wolff, the defendant, is an orchardist engaged in raising pears and apples.

In the early summer of 1917 the plaintiffs, acting through their agent residing in Medford, entered into a contract with Wolff whereby the plaintiffs were to take care of, handle, pack, ship, market and sell the defendant's 1917 crop of fruit. Under date of September 14, 1917, the defendant gave to Denny & Company his promissory note in the sum of $650 payable on demand with interest at the rate of 7 per cent per annum. Although the record made by the pleadings and evidence does not inform us of the reason for the giving of the note, the plaintiffs and defendant say in their printed briefs that the note for $650 represented advances made by plaintiffs to defendant upon the 1917 crop of fruit.

Pursuant to the contract the defendant delivered his 1917 crop of pears and apples to the plaintiffs at their warehouse in Medford. The defendant alleges that he delivered 5,114 boxes of fruit. The plaintiffs aver that the defendant delivered only 2,647 boxes of commercial fruit and 513 boxes of culled apples. The defendant offered evidence to the effect that he delivered to the plaintiffs 4,500 boxes of loose apples.

There was evidence to the effect that the plaintiffs permitted a portion of the fruit—

"to remain for many weeks on a platform in the rear of plaintiffs' warehouse during the inclement weather and the fall of 1917, where said fruit was exposed to the elements, part of which was stolen, destroyed and damaged by horses and children, and otherwise in-

jured as alleged in the complaint, and that defendant suffered substantial damages from said negligence.''

The contract required the plaintiffs as agents of the defendant to pack, ship and sell the fruit; and accordingly the plaintiffs packed all of the fruit, which at the time of packing was salable, and in the latter part of November or the first part of December loaded the fruit into "regular fruit express cars * * regular refrigerator-çars" furnished by the Southern Pacific Company, and shipped the fruit from Medford over the Southern Pacific Company railroad and connecting lines to eastern markets.

When the cars containing the fruit arrived at their respective destinations it was found that much of the fruit had been frozen while in transit; and the plaintiffs through their claim attorney in Chicago filed claims with the carrier for damages because of the freezing of the fruit.

The promissory note which the defendant had executed was not paid, and on December 6, 1918, the plaintiffs began this action to recover the amount due on the note. The complaint follows the form usually employed in actions on promissory notes.

The defendant answered by admitting the execution of the note and alleging a counterclaim. In substance the defendant avers in his counterclaim that he delivered 5,114 boxes of fruit reasonably worth $3,780 over and above the cost of packing, storing, shipping, selling and "other expenses necessarily incidental to the sale of such fruit in the regular and usual markets"; but that because of the negligence of the plaintiffs "defendant only received returns from said plaintiffs amounting to the sum of $941.46." The defendant credits the plaintiffs with $941.46, the amount of "the

101 Or.—17

returns" received from the plaintiffs, and with the
further sum of $655.46, the amount said to be due on
the note, and then demands judgment against the
plaintiffs for $2,173.08, the balance alleged to be due
after the allowance of the two credits.

The material specifications of negligence are: (1)
That the plaintiffs permitted the fruit "to remain for
many weeks on a platform in the rear" of the plain-
tiffs' warehouse in Medford "during the inclement
weather of the fall of 1917, where said fruit was ex-
posed to the elements, part of which was stolen, de-
stroyed, and damaged by horses and children, and
otherwise injured"; and (2) "plaintiffs so handled,
packed, shipped, and routed said fruit that much of
the same was frozen prior to the time it reached its
destination."

There was a verdict and judgment for the defend-
ant for $105.04. The plaintiffs appealed.

REVERSED AND REMANDED.

For appellants there was a brief over the names of
*Mr. Porter J. Neff* and *Mr. Frank P. Farrell*, with an
oral argument by *Mr. Neff*.

For respondent there was a brief over the names of
*Mr. George M. Roberts* and *Mr. Rawles Moore*, with
an oral argument by *Mr. Roberts*.

HARRIS, J.—The pleadings may be summarized
thus: The execution of the note is admitted. The
plaintiffs aver that the note has not been paid and
that they are entitled to judgment for the amount of
the note. The defendant says that he delivered to the
plaintiffs fruit worth $3,780, over and above the ex-
pense of packing, shipping and marketing, but that

because of the negligence of the plaintiffs he received only $941.46 for the fruit; and that therefore he is entitled to recover from the plaintiffs the sum of $2,173.08, the alleged balance remaining after deducting from the sum of $3,780, which is the alleged net value of the fruit, a credit of $655.46, the amount of the note, and a credit of $941.46, the amount of the ''returns'' on the fruit.

The plaintiffs concede that there was evidence sufficient to sustain a verdict finding them guilty of negligence in permitting the fruit to remain on the platform in the rear of the warehouse in Medford; but the plaintiffs contend that there was no evidence at all to support the charge that the fruit was frozen en route as a result of their negligence.

In 1917 the Southern Pacific Company, the carrier, offered to shippers two forms of contract: Under one form the shipper paid the freight charges, and, as we understand the record, the shipper assumed the risk of loss by freezing; but under the other form, known as Option No. 2, the shipper paid the regular freight charges and an additional charge of about $27 per car in consideration of which the carrier undertook to protect the fruit from damage by freezing while in transit and agreed to assume the risk of damagé by frost and to reimburse the shipper for any loss caused by freezing. All the fruit shipped by the plaintiffs was shipped under Option No. 2; and therefore the plaintiffs insist that they did all that the law required of them.

The defendant says that the plaintiffs ought to have installed false floors and lined the cars with paper, and that the failure of the plaintiffs so to do was negligence. The only question for decision

is whether the failure of the plaintiffs to install false floors and line the cars with paper constituted actionable negligence.

1, 2. The law imposed upon the plaintiffs the duty of exercising reasonable care when shipping the fruit. If the plaintiffs exercised the same degree of care which an ordinarily prudent man would have employed then the plaintiffs cannot be held liable for the freezing of the fruit: Mechem on Agency (2 ed.), §§ 2523, 2535; 11 R. C. L. 765; 19 Cyc. 118. It must be remembered that the fruit was loaded into regular express cars " * * regular refrigerator-cars." These cars are designed to protect the fruit from heat and from cold. For each car of fruit shipped the plaintiffs paid to the carrier $27 in order to secure the agreement of the carrier to assume the risk of loss by freezing. The shipper delivered the fruit to a responsible carrier, and under the terms of Option No. 2, the carrier agreed to protect the fruit against loss by frost: See 2 C. J. 731; *Brown* v. *Denison,* 2 Wend. (N. Y.) 593. What more could the shipper have done? The defendant says that the plaintiffs should have placed false floors in the cars and should have lined the cars with paper. The money which was paid to the carrier for its agreement to protect the fruit and assume the risk of loss was chargeable to the defendant and in the final analysis was the defendant's money. If the plaintiffs had expended money on false floors and paper lining, that money would have been expended for the very protection which the carrier had agreed to furnish and was paid to furnish; and if the plaintiffs had expended money on false floors and paper lining after having paid the carrier for its agreement to assume the risk of loss it is quite likely that the defendant

would have objected to being charged for the expense of false floors and paper lining. The plaintiffs performed their full duty when they shipped under Option No. 2; and it was error to permit the jury to include in their verdict, as they did, damages for loss caused by freezing. The plaintiffs filed claims with the carrier, and the carrier acknowledged its liability by paying $9 a few days before the trial and the further sum of approximately $245 the day before the trial; and at the time of the trial the remaining claims were still in process of adjustment.

3. It is argued that Ralph Bardwell testified that even when shipping under Option No. 2, it was customary for shippers in that locality to line the cars with paper and to install false floors. Although the plaintiffs insist that the testimony of Bardwell is not fairly susceptible of the construction placed upon it by the defendant, and although there was testimony in behalf of the plaintiffs to the effect that there was no such custom or usage, it may be assumed for the purposes of this discussion that Bardwell unequivocally testified that it was customary to install false floors and to line the cars with paper; and even then it must be held that there was insufficient evidence to prove a custom or usage, for only one witness testified to the existence of the custom, while our statute requires two witnesses: Section 801, Or. L.; *Prement v. Wells,* 65 Or. 336, 342 (133 Pac. 647).

It was prejudicial error to permit the jury to assess damages against the plaintiffs for loss caused by freezing. The judgment is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.

BURNETT, C. J., and McBRIDE and BEAN, JJ., concur.